UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY TUCK, as an individual;<br>DEBORAH TUCK, as an individual,<br><br>                            Plaintiffs,<br>v.<br><br>WAYNE MCMULLEN, et. al.,<br><br>                            Defendants. | Case No.: 19-cv-1505-WQH-RBB<br><br>**ORDER** |

HAYES, Judge:

    The matters before the Court are the Motions to Dismiss Plaintiffs' Complaint filed by Defendants Wayne McMullen, Donnie Drake, and Nancy McLennan (ECF No. 8) and Cascadians, Inc., and Associated Asset Management, LLC (ECF No. 24).

**I.    PROCEDURAL BACKGROUND**

    On August 12, 2019, Plaintiffs Roy and Deborah Tuck, proceeding *pro se*, filed a Complaint against Defendants Yes Energy Management, Inc. ("YEM"), Cascadians, Inc. ("Cascadians"), Champs, Associated Asset Management, LLC ("AAM"), Epsten Grinnel & Howell, APC, Wayne McMullen, Donnie Drake, Nancy McLennan, Amanda Shaw, Annette Imoto, Michelle Dennis, and Does 1 through 10, inclusive. (ECF No. 1). Cascadians, AAM, YEM, Wayne McMullen, Donnie Drake, and Nancy McLennan are the only remaining Defendants. Plaintiffs bring claims against Defendants Cascadians, AAM, McMullen, Drake, and McLennan for 1) violations of the Telephone Consumer Protection Act ("TCPA"); 2) violations of the Fair Debt Collection Practices Act ("FDCPA"); and 3) misprision of felony. Plaintiffs bring claims against all Defendants for violations of

California state law. Plaintiffs seek actual damages, statutory damages, treble damages, punitive damages, declaratory relief, and attorneys' fees and costs.

On September 3, 2019, Defendants McMullen, Drake, and McLennan (collectively, the "Individual Defendants") filed a Motion to Dismiss Plaintiffs' Complaint. (ECF No. 8). The Individual Defendants move to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to strike portions of Plaintiffs' Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and to strike Plaintiffs' claims for malicious prosecution and abuse of process pursuant to section 425.16 of the California Code of Civil Procedure. On September 30, 2019, the Individual Defendants filed a Reply in support of their Motion to Dismiss, contending that Plaintiffs waived their right to oppose the Motion to Dismiss. (ECF No. 13). On October 2, 2019, Plaintiffs filed an untimely Opposition to the Individual Defendants' Motion to Dismiss. (ECF No. 17). On October 3, 2019, Plaintiffs filed an Objection to the Individual Defendants' Reply. (ECF No. 19). On October 7, 2019, the Individual Defendants filed an additional Reply with leave of Court. (ECF No. 20).

On October 15, 2019, Defendants AAM and Cascadians filed a Motion to Dismiss Plaintiffs' Complaint. (ECF No. 24). AAM and Cascadians move to Dismiss Plaintiffs' Complaint on the same grounds as the Individual Defendants. On the same day, Defendant YEM filed an Answer to Plaintiffs' Complaint. (ECF No. 25). On October 17, 2019, YEM filed a Notice of Joinder, joining AAM and Cascadians' Motion to Dismiss. (ECF No. 26). On November 7, 2019, Plaintiffs filed an Opposition to YEM's Notice of Joinder. (ECF No. 37). On the same day, Plaintiffs filed an Opposition to AAM and Cascadians' Motion to Dismiss. (ECF No. 39). On December 16, 2019, AAM and Cascadians filed a Reply in support of their Motion to Dismiss. (ECF No. 44).

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiffs moved to Vista Cascade Mobile Home Park ("Vista Cascade") in Vista, California, in 2014 after Plaintiff Roy Tuck turned 55. Vista Cascade is a 55+ mobile home community with 124 properties and 145 residents. Vista Cascade is owned or operated by

2

Defendant Cascadians. (*See* ECF No. 1 ¶ 21 ("Cascadians Inc. [is a] senior 'resident owned' mobile home park located in North San Diego County[.]"); *see also* Ex. C, ECF No. 1-2 at 9 ("Cascadians . . . also operates under the name Vista Cascade Mobile Home Park . . . .")).

Plaintiffs paid monthly utility bills of $350-$400 for the first few years that they lived at Vista Cascade. In August 2015, Plaintiffs began to receive "illegal harassing consumer debt collection calls" from Defendants Cascadians, AAM (Cascadians' property management company), Wayne McMullen (the president of Cascadians' Board of Directors), Donnie Drake (a resident of Vista Cascade and the vice president of Cascadians' Board of Directors), Nancy McLennan (Cascadians' managing agent), the five dismissed Defendants, and "Does 1 through 10." (ECF No. 1 ¶ 132). Over the past four years, Plaintiffs received at least thirty calls to their three cellular phones. "[S]ome of the calls" utilized a prerecorded voice or automated telephone dialing system ("ATDS"). (*Id.*).

In May 2017, Plaintiffs began receiving utility bills of $1,800 or more per month. The utility bills came from Defendant YEM—a "multi-[s]tate utility provider"—and directed Plaintiffs to remit payment to Cascadians. (*Id.* ¶ 22; *see* Ex. B, ECF No. 1-2 at 5 ("YES Energy Management provides a complete solution for your utility cost recovery needs.")). The utility bills Plaintiffs received beginning in May 2017 were "grossly inflated." (ECF No. 1 ¶ 142). Defendant McMullen was directing YEM to overcharge Plaintiffs or was "working . . . in direct collusion with [YEM] . . . illegally inflating and manufacturing monthly [u]tility [b]ills . . . ." (*Id.* ¶ 137). Plaintiffs struggled to pay the monthly utility bills. Plaintiffs "were forced to borrow monies from their mother, sons, friends, and other family members" in order to pay the bills each month. (*Id.* ¶ 146). Plaintiffs would pay their bill "to a zero [ ] balance" each month, but the next month's bill would not reflect the previous month's payment. (*Id.* ¶ 147).

On August 7, 2018, Plaintiffs received a letter from dismissed Defendant Epsten Grinnel & Howell, APC, attempting to collect a debt of $2,675.33 allegedly owed to Cascadians. Plaintiffs disputed the debt. On August 22, 2018, Plaintiffs received a letter

1  from Epsten Grinnel & Howell, APC, notifying Plaintiffs that it had validated the debt.
2  The letter states, "This communication is . . . an attempt to collect a debt . . . . We are
3  contacting you on behalf of Cascadians, Inc. ('Association') . . . . As of this date, your
4  account balance is $2,094.33. Please be advised that the Association is the original creditor
5  . . . . This office now considers this debt validated." (Ex. U, ECF No. 1-3 at 18; Ex. U.1,
6  ECF No. 1-3 at 20).

On September 21, 2018, Cascadians filed a small claims suit against Plaintiffs for $2094.33 in the Superior Court for the State of California, County of San Diego. Eventually, the court entered judgment in Plaintiffs' favor, finding that they did not owe Cascadians any money. Defendants Cascadians, AAM, McMullen, Drake, and McLennan "are running a totally [][b]roken [a]ccounting and [m]onthly [b]illing [s]tatement [s]ystem" by failing to send monthly utility statements, sending monthly utility statements with "grossly inflated amounts due," sending monthly utility statements that "include bogus [l]egal [f]ee[]s," and failing to credit Plaintiffs for past payments. (*Id.* ¶ 163).

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). However, "a plaintiff's obligation to

4

19-cv-1505-WQH-RBB

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation omitted).

## IV. TELEPHONE CONSUMER PROTECTION ACT CLAIM

Defendants contend that Plaintiffs fail to state a claim under the TCPA. Defendants contend that "Plaintiffs have only made extremely vague conclusory statements to support [their TCPA] cause of action." (ECF No. 8-1 at 12; ECF No. 24-1 at 14). Defendants contend that Plaintiffs fail to identify calls made by specific Defendants on specific dates. Defendants contend that Plaintiffs fail to allege facts that show than an ATDS was used to call Plaintiffs. Defendants contend that it "is very likely" that Plaintiffs consented to the alleged calls by providing their cellular phone numbers to Cascadians or the other Defendants. (ECF No. 8-1 at 12; ECF No. 24-1 at 13).

Plaintiffs contend that they sufficiently allege that Defendants use an ATDS. Plaintiffs contend that Defendants use an ATDS to contact Vista Cascade residents to inform them of Vista Cascade activities, maintenance projects, and emergencies. Plaintiffs contend that they revoked any consent to being called by Defendants by writing, emailing, and leaving voice messages telling Defendants to "cease and desist all collection activities immediately." (ECF No. 17 at 23; ECF No. 39 at 21).

"The TCPA was created in response to the ever increasing consumer complaints regarding telemarketing calls." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045 (9th Cir. 2017). The TCPA provides, in relevant part:

It shall be unlawful for any person . . . to make any call (other than . . . with

5

> the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . [.]

47 U.S.C. § 227(b)(1)(A)(iii). In order to state a claim for violation of § 227(b)(1)(A)(iii), Plaintiffs must allege facts that show that 1) the Defendant made a call 2) to a cellular telephone number; 3) using an ATDS or prerecorded voice. *Van Patten*, 847 F.3d at 1044 n. 3 (citing *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1043 (9th Cir. 2012)). "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Id.* at 1044; *see In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent . . . . Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.").

To demonstrate the first element of a claim under § 227(b)(1)(A)(iii)—that the defendant made a call—the plaintiff must show that the defendant either directly made the call or had an agency relationship with the person who made the call. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) (holding that "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller"). In this case, Plaintiffs allege:

> On August 20, 2015, plaintiff[]s [ ] received the first automated illegally placed telephone call at 7:03 am[.] [S]ince that date[,] [the five dismissed Defendants, Doe Defendants 1 through 10, and Defendants McMullen, Drake, McLennan, Cascadians, and AAM] have . . . plac[ed] [ ] more than [ ] thirty consumer debt collection calls to follow.

(ECF No. 1 ¶ 279). Plaintiffs allege that the five dismissed Defendants, Doe Defendants 1 through 10, and Defendants McMullen, Drake, McLennan, Cascadians, and AAM "utilized

6

a [v]oice and/or ATDS . . . during at least 60% of the more than [ ] thirty illegally placed calls to the Plaintiff[]s['] three [ ] cell phone numbers . . . ." (*Id.* ¶ 283). Plaintiffs allege that the callers did not disclose their identities in some of the calls. Plaintiffs fail to allege facts that support an inference that Defendant McMullen, Drake, McLennan, Cascadians, or AAM made any call to Plaintiffs in violation of the TCPA. The Court concludes that Plaintiffs fail to state a claim against McMullen, Drake, McLennan, Cascadians, or AAM for violation of the TCPA.

Defendants' Motions to Dismiss Plaintiffs' first cause of action for violations of the TCPA are granted.

## V. FAIR DEBT COLLECTION PRACTICES CLAIM

Defendants contend that Plaintiffs fail to state a claim under the FDCPA. Defendants contend that Plaintiffs fail to allege that each Defendant is a debt collector within the meaning of the FDCPA. Defendants contend that "each named defendant . . . [was] allegedly associated with the debt owed by Plaintiff prior to it becoming in default." (ECF No. 8-1 at 13; ECF No. 24-1 at 14). Defendants contend that each Defendant "fall[s] within an exception to the FDCPA as an officer or employee of the original creditor under [15 U.S.C. §] 1692a(6)(A) or as a creditor who assisted in collections prior to the account being past due under [15 U.S.C. §] 1692a(6)(F)(iii)." (ECF No. 8-1 at 13; ECF No. 24-1 at 14-15).

Plaintiffs contend that they sufficiently allege that each of the Defendants is a debt collector under the FDCPA. Plaintiffs contend that Defendants were all attempting to collect a debt allegedly owed by Plaintiffs.

Plaintiffs bring claims against Defendants McMullen, Drake, McLennan, Cascadians, and AAM for violations of the FDCPA, 15 U.S.C. §§ 1692c(a)(1), 1692d(5)-(6), and 1692e(10).[1] "Seeking somewhat to level the playing field between debtors and

---

[1] 15 U.S.C. § 1692c(a)(1) makes it unlawful for any debt collector to communicate with a consumer before 8 a.m. or after 9 p.m. without the consumer's express consent. 15 U.S.C. § 1692d(5) makes it unlawful

debt collectors, the FDCPA prohibits debt collectors 'from making false or misleading representations and from engaging in various abusive and unfair practices.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). "Because [the FDCPA's] prohibitions apply only to 'debt collector[s]' as defined by the FDCPA, the complaint must plead 'factual content that allows the court to draw the reasonable inference' that [the defendant] is a debt collector." *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013) (first alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Under the FDCPA, the term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The term "debt collector" does not include a "creditor"—"any person . . . to whom a debt is owed"—unless the creditor "uses any name other than his own which would indicate that a third person is collecting or attempting to collect [a] debt[ ]." 15 U.S.C. § 1692a(4), (6). Plaintiffs allege that Defendant Cascadians is a debt collector within the meaning of the FDCPA. Plaintiffs allege that Cascadians, "during the regular course of business, collects on alleged negative consumer debts from 145 . . . senior tenant/mobile home and land owners" at Vista Cascade. (ECF No. 1 ¶ 23). The exhibits attached to Plaintiffs' Complaint demonstrate that Plaintiffs' received utility bills from Cascadians, and Plaintiffs paid their utility bills to Cascadians. The letters from dismissed Defendant Epsten Grinnel & Howell, APC, show that Plaintiffs' alleged debt was owed to Cascadians. (*See* Ex. T, ECF No. 1-3 at 14 (August 7, 2018, letter from Epsten Grinnel & Howell, APC,

---

for a debt collector to "caus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(6) makes it unlawful for a debt collector to place a telephone call "without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692e(10) makes it unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

"Re: Cascadians, Inc. (CREDITOR)"); *see also* Ex. U, ECF No. 1-3 at 18 (August 22, 2018, letter from Epsten Grinnel & Howell, APC, stating, "We are contacting you on behalf of Cascadians, Inc. ('Association') . . . . As of this date, your account balance is $2,094.33. Please be advised that the Association is the original creditor")). Taking Plaintiffs' factual allegations as true, Cascadians is Plaintiffs' creditor on the alleged debt and is not a debt collector within the meaning of the FDCPA.

The term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor[.]" 15 U.S.C. § 1692a(6)(A). Plaintiffs allege that Defendants McMullen and Drake regularly collect "alleged negative or owing consumer debt from the 145 . . . elderly mobile home owners" at Vista Cascade. (ECF No. 1 ¶ 27). Plaintiffs allege that McMullen is the president of Cascadians' Board of Directors, Drake is the vice president of Cascadians' Board of Directors, and McLennan is Cascadians' managing agent. Taking Plaintiffs' factual allegations as true, Defendants McMullen, Drake, and McLennan are "officer[s] or employee[s]" of creditor Cascadians and were attempting to collect a debt on Cascadians' behalf. 15 U.S.C. § 1692a(6)(A). The Court cannot infer from Plaintiffs' allegations that Defendant McMullen, Drake, or McLennan is a "debt collector" within the meaning of the FDCPA. 15 U.S.C. § 1692a(6).

The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or assessed to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F)(iii). To determine whether a debt is "in default" under § 1692a(6)(F)(iii), courts "look to any underlying contracts and applicable law governing the debt at issue." *De Dios v. Int'l Realty & RC Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011). Where there is a no underlying contract or applicable law governing the debt at issue, courts construe "in default" to mean "a debt that is at least delinquent, and sometimes more than overdue." *Id.* at 1075 n. 3; *see also id.* at 1075 (discussing with approval *Franchesi v. Mautner-Glick Corporation*, 22 F. Supp. 2d 250 (S.D.N.Y. 1998), in which the court

determined that "[b]ecause the property management obtained the right to collect rents on the landlord's behalf before the rent became due . . . the agent was not collecting a debt in default when it sent a demand letter for the remaining, disputed portion of overdue rent").

Plaintiffs allege that they paid their utility bills to a zero balance each month. Plaintiffs allege that they began receiving debt collection calls from Defendants, including AAM, in August 2015. (ECF No. 1 ¶ 132). Plaintiffs attached to the Complaint utility bills with some forward balance owed from 2018 and 2019. Taking Plaintiffs' allegations as true, the Court cannot infer that AAM began making debt collection calls to Plaintiffs when the utility bills were in default. The Court cannot infer from Plaintiffs' allegations that Defendant AAM is a "debt collector" within the meaning of the FDCPA. 15 U.S.C. § 1692a(6).

Defendants' motions to dismiss Plaintiffs second through fifth causes of action under the FDCPA are granted.

## VI. MISPRISION OF FELONY CLAIM

Defendants contend that Plaintiffs fail to state a claim for misprision of felony. Defendants contend that misprision of felony "is a federal crime, subject to a criminal standard of proof, and without any private right of action in a civil matter . . . ." (ECF No. 8-1 at 15; ECF No. 24-1 at 16).

Plaintiffs contend that they have stated a claim for misprision of felony against all Defendants. Plaintiffs request the Court to "fine or imprison" Defendants McMullen and Drake. (ECF No. 17 at 31; ECF no. 39 at 29).

18 U.S.C. § 4 provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4 is a federal criminal statute. There is no private right of action to enforce a criminal statute unless the intent to create a private right of action is expressed in the statute

or clearly implied. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). The plaintiff has the burden to establish that a criminal statute confers a private right of action. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004).

In this case, Plaintiffs fail to provide any authority that supports a private right of action under 18 U.S.C. § 4. *See Apollo v. Peake*, 306 F. App'x 584, 586-87 (Fed. Cir. 2009) ("We are aware of no authority for the proposition that an alleged violation of the federal misprision of felony statute gives rise to a private right of action."). The Court concludes that Plaintiffs lack standing to bring a claim under 18 U.S.C. § 4. *See Reed v. East End Props., Inc.*, No. ED CV 17-955-DMG (KKx), 2018 U.S. Dist. LEXIS 228558, at *14 (C.D. Cal. Mar. 15, 2018) (concluding that plaintiffs lacked standing to bring claim for misprision of felony); *Gilreath v. Bach*, No. EDCV 17-0694-DOC (JEM), 2017 U.S. Dist. LEXIS 188346, at *13 (C.D. Cal. Oct. 11, 2017) (18 U.S.C. § 4 is a "criminal statute[ ] for which there is no private right of action"); *Scott v. Cal. Dep't of Corr. & Rehab.*, No. 10cv0917 IEG (CAB), 2010 U.S. Dist. LEXIS 59989, at *4 (S.D. Cal. June 16, 2010) (finding no private right of action for misprision of felony).

Defendants' Motions to Dismiss Plaintiffs' seventh cause of action for misprision of felony are granted.

## VII. STATE LAW CLAIMS

Plaintiffs' remaining claims arise under California state law and include causes of action for violation of the California Rosenthal Fair Debt Collection Practices Act, malicious prosecution, abuse of process, defamation, invasion of privacy, civil conspiracy, "negligent, reckless, wanton, malicious, and/or intentional conduct," negligence in hiring, supervising, or training, and intentional infliction of emotional distress. (ECF No. 1 at 105).

The federal supplemental jurisdiction statute provides, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The district courts may

11

19-cv-1505-WQH-RBB

or clearly implied. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). The plaintiff has the burden to establish that a criminal statute confers a private right of action. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004).

In this case, Plaintiffs fail to provide any authority that supports a private right of action under 18 U.S.C. § 4. *See Apollo v. Peake*, 306 F. App'x 584, 586-87 (Fed. Cir. 2009) ("We are aware of no authority for the proposition that an alleged violation of the federal misprision of felony statute gives rise to a private right of action."). The Court concludes that Plaintiffs lack standing to bring a claim under 18 U.S.C. § 4. *See Reed v. East End Props., Inc.*, No. ED CV 17-955-DMG (KKx), 2018 U.S. Dist. LEXIS 228558, at *14 (C.D. Cal. Mar. 15, 2018) (concluding that plaintiffs lacked standing to bring claim for misprision of felony); *Gilreath v. Bach*, No. EDCV 17-0694-DOC (JEM), 2017 U.S. Dist. LEXIS 188346, at *13 (C.D. Cal. Oct. 11, 2017) (18 U.S.C. § 4 is a "criminal statute[ ] for which there is no private right of action"); *Scott v. Cal. Dep't of Corr. & Rehab.*, No. 10cv0917 IEG (CAB), 2010 U.S. Dist. LEXIS 59989, at *4 (S.D. Cal. June 16, 2010) (finding no private right of action for misprision of felony).

Defendants' Motions to Dismiss Plaintiffs' seventh cause of action for misprision of felony are granted.

## VII. STATE LAW CLAIMS

Plaintiffs' remaining claims arise under California state law and include causes of action for violation of the California Rosenthal Fair Debt Collection Practices Act, malicious prosecution, abuse of process, defamation, invasion of privacy, civil conspiracy, "negligent, reckless, wanton, malicious, and/or intentional conduct," negligence in hiring, supervising, or training, and intentional infliction of emotional distress. (ECF No. 1 at 105).

The federal supplemental jurisdiction statute provides, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The district courts may

decline to exercise supplemental jurisdiction" for a number of reasons, including if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

"Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims." *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the [*United Mine Workers of America v.*] *Gibbs*[,] [383 U.S. 715 (1966),] values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quotation omitted). "'[I]n the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'" *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1970)).

In this case, Plaintiffs fail to state a claim against Defendants McMullen, Drake, McLennan, Cascadians, or AAM over which this Court has original jurisdiction. Plaintiffs do not bring any claim against Defendant YEM over which this Court has original jurisdiction. The Court does not have diversity jurisdiction over this action. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Defendants' Motions to Dismiss are granted. Plaintiffs' Complaint is dismissed without prejudice.

## VIII. CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss Plaintiffs' Complaint filed by Defendants Wayne McMullen, Donnie Drake, and Nancy McLennan (ECF No. 8) and Cascadians, Inc., and Associated Asset Management, LLC (ECF No. 24) are granted. Plaintiffs' Complaint is dismissed without prejudice. No later than thirty days from the date

12

19-cv-1505-WQH-RBB

of this Order, Plaintiffs may file a motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c).

Dated: April 13, 2020

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court